UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF FLORIDA

EZEMARVAL, L.L.C d/b/a
MIACARGO GROUP,

    Plaintiff,

vs.

EL INSTITUTO POSTAL
DOMINICANO,

    Defendant,
_____/

**COMPLAINT**

COMES NOW, Plaintiff EZEMARVAL L.L.C d/b/a MIACARGO GROUP (hereinafter referred to as "MIACARGO") by and through undersigned counsel and sues Defendant, EL INSTITUTO POSTAL DOMINICANO (also known as and referred to as ('IMPOSDOM") and states as follows:

### I.    PARTIES AND JURISDICTION

1. Plaintiff, EZEMARVAL, L.L.C is a Florida Limited Liability Corporation doing business under the fictitious name of MIACARGO. The Plaintiff has its principal place of business in Miami Dade County, Florida.

2. Defendant EL INSTITUTO POSTAL DOMINICANO ("INPOSDOM") is an institutional body of the government of the Dominican Republic created by Law No. 307 dated November 15, 1985, with RNC 401-50025-6 with its principal address situated at Calle Heroes de Luperon Esq. Rafael Domiron, Centro de Heroes de Constanza, Miamon y Estero Hondo, Santo Domingo de Guzman, Distrito Nacional.

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 as the Plaintiff is a citizen of the State of Florida, the Defendant is a citizen of the Dominican Republic and the matter in controversy exceeds seventy-five ($75,000.00)

4. This Court also has jurisdiction pursuant to 28 U.S.C §1605(a)(2) by the Defendant engaging in commercial activity in the United States and pursuant to 28 U.S.C. U.S.C. §1605(a)(1) by expressly waiving sovereign immunity as contained in ¶12 of the "Contract Between El Instituto Postal Dominicano (Inposdom) and Ezemarval LLC d/b/a Miacargo Group". A copy of the contract is attached hereto and marked as Exhibit "1".

## BREACH OF CONTRACT

5. On September 27, 2020, Adan Pegureo, Director General of INPOSDOM travelled to Miami, Florida and meet with the Chief Executive Officer of MIACARGO, Diego Vestillero, to discuss entering into an agreement with MIACARGO to undertake the delivery of packages and mail from and to the Dominican Republic.

6. After extensive negotiations INPOSDOM, through Mr. Peguero reached an agreement which was to be executed after INPOSDOM obtained the necessary approval from its Board of Directors.

7. On April 7, 2021, after obtaining approval by its Board of Directors, INPOSDOM thought Adan Peguero and MIACARGO through Diego Vestillero executed Exhibit "1".

8. After the Agreement was executed MIACARGO developed and implemented a centralized web platform to allow the centralization of all the services offered by INPOSDOM including integrating the operational, logistical, administrative and commercial functions.

9. Additionally, MIACARGO undertook:

a) the renovation and repair of the main postal office which included substantial repairs to the roof of the facility;

b) Replace and upgrade the lighting in the main postal facility;

c) Exterminated and eradicated a rodent problem which affected the delivery of mail;

d) Painted the facility;

e) Established modern internet systems;

f) Implemented a system of tracking all shipments and;

g) Purchased and installed, tablets, desktop computers, telephone exchanges, telephone equipment, televisions and other equipment that allowed INPOSDOM to effectively operate a postal system. This equipment included 180 custom made three-wheel motor powered delivery vehicles imported manufactured in China, 84 specially designed and equipped bicycles, 30 Hewlett-Packard Pavilion 4-GB computers, 215 thermal label printers, 22 Dell Desktop computers, 50 Dell Monitors 24 KW14, 198 Scan Avenger wireless barcode scanners, 198 Lenovo tablets M-8, 10 Apple 8th Generation iPads, 10 Apple MacBook's 128GB. 14 H Sense Televisions, 44 Samsung Televisions

10. On November 16, 2021, INPOSDOM through a newly appointed Interim Director General, Katiusca Del Carmen Baez held a press conference informing the media that she had cancelled the contract between INPOSDOM and MIACARGO.[1]

---

[1] Upon information and belief, the Agreement was cancelled due to financial and political pressure on the present administration exerted by the over 75 courier services who deliver the majority of the packages to and from the Dominican Republic. The agreement between IMPOSDOM and MIA CARGO would have resulted in a significant loss of revenue to the courier entities who have dominated this market.

11. On January 25, 2022, MIACARGO formally demanded that INPOSDOM return all property and assets owned by MIACARGO which were in the possession of INPOSDOM at its multiple facilities.

12. After cancelling the agreement, INPOSDOM refused employees of MIACARGO to retrieve its equipment from its postal facility in Santo Domingo worth in excess of $1.5 million dollars.

13. On February 17, MIACARGO was notified of the termination of the Agreement between the parties by the Consulate General of the Dominican Republic in Miami

14. On April 27, 22, MIACARGO contacted Mr. Deligne Ascencio, Minister of Public Works and Communications, demanding that INPOSDOM comply with the liquidated damages provision of the Agreement and return the property owned by MIACARGO held in the Santo Domingo Postal Office. As of the filing of this action, INPOSDOM has failed to comply with ¶13 or returned any of the property owned by MIACARGO.

15. Pursuant to ¶13, the agreement was to continue for a term of ten (10) years. The agreement allowed either party to terminate the agreement by providing the other party six months' notice. In the event INPOSDOM terminated the agreement, in addition to giving MIACARGO 6 months written notice, INPOSDOM was also obligated to pay the sum of $10,000,000.00 (Ten million United States Dollars) to MIACARGO which was intended to reimburse MIACARGO for "expenses creating and establishing the logistical system necessary to perform its duties under this agreement"

16. Plaintiff, MIACARGO has demanded that INPOSDOM pay the sum of ten million dollars pursuant to the terms of the agreement, but INPOSDOM has refused to comply with this demand.

17.     Plaintiff, MIACARGO has complied with all terms of the agreement and has further complied with all conditions precedent for the institution of this action including providing written notice of default to INPOSDOM and granting INPOSDOM the fifteen (15) days to cure the default under ¶14 of the contract.

18.     Pursuant to ¶14 of the Agreement, the prevailing party is entitled to be reimbursed for all costs and expenses including reasonable attorney fees.

WHEREFORE, Plaintiff EZEMARVAL, L.L.C d/b/a MIACARGO demands judgment against Defendant EL INSTITUTO POSTAL DOMINICANO (IMPOSDOM) in the amount of ten million dollars ($10,000,000.00) along with interest, costs, and attorney fees.

Dated this 14th day of June 2022,

                                                  Respectfully Submitted,

                                                  WILLIAMS LAW GROUP

By:     */s/ Stewart D. Williams*
       Stewart D. Williams
       Florida Bar No.: 352705
       swilliams@williamslaw-fl.com
       Datran Center II
       9130 S. Dadeland Blvd., Suite 1500
       Miami, FL 33156
       Telephone: (786) 687-4222
       Facsimile: (786) 697-0732
       *Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on June 14, 2022 , I electronically filed the foregoing with the Clerk of the Court by using CM/ECF system.

    By:    */s/ Stewart D. Williams*
               Stewart D. Williams
               Florida Bar No.: 352705
               swilliams@williamslaw-fl.com
               Datran Center II
               9130 S. Dadeland Blvd., Suite 1500
               Miami, FL 33156
               Telephone: (786) 687-4222
               Facsimile: (786) 697-0732
               *Attorneys for Plaintiff*

## CONTRACT BETWEEN EL INSTITUTO POSTAL DOMINICANO (INPOSDOM) AND EZEMARVAL LLC D/B/A MIACARGO GROUP

THIS AGREEMENT, effective as of April 7, 2021. Is entered into between **EL INSTITUTO POSTAL DOMINICANO** ("INPOSDOM"), an institutional body of the government of the Dominican Republic, created by Law No. 307, dated November 15, 1985, with RNC 401-50025-6, with its principal address situated at Calle Heroes de Luperon Esq. Rafael Damiron, Centro de los Heroes de Constanza, Miamon y Estero Hondo, Santo Domingo de Guzman, Distrito Nacional, and **EZEMARVAL LLC D/B/A MIACARGO GROUP** ("MIACARGO"), a Florida limited liability company, with its principal address situated at 7955 NW 64th Street, Miami, Florida 33166, United States of America (INPOSDOM and MIA CARGO shall hereinafter be sometimes referred to collectively as the "Parties" or individually as a "Party").

### RECITALS

A.   INPOSDOM is a Dominican Republic governmental service institution, with both national and international presences, which facilitates the distribution of documents and packages ("CARGO") within, to and from the Dominican Republic, with designated agents situated throughout the world;

B.   MIACARGO is engaged in the business of managing, processing, receiving, redistributing and delivering international packaging throughout the world;

C.   MIACARGO is also engaged in the business of providing services and logistics for managing, processing, receiving, redistributing and delivering international packaging throughout the world; and

D.   Pursuant to the terms and conditions of this Agreement, INPOSDOM wishes to engage MIACARGO to provide services and logistics for INPOSDOM's national and international distribution of CARGO within, to and from the Dominican Republic.

### AGREEMENT

**NOW THEREFORE**, the Parties, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and intending to be legally bound, agree as follows:

1.   **MIACARGO's Obligations.** MIACARGO shall be the exclusive provider of services and logistics for INPOSDOM's national and international distribution of CARGO within, to and from the Dominican Republic, as follows:

   A.   MIACARGO shall receive and process at its Miami, Florida address and/or any of MIACARGO's offices (wherever situated) CARGO sent or shipped by direct or indirect clients of INPOSDOM;



**EXHIBIT 1**

1

B. MIACARGO shall facilitate and provide monitoring and storage of CARGO in its possession for INPOSDOM twenty-four hours a day, seven days a week;

C. MIACARGO shall forward and deliver to the Dominican Republic, and to all indicated and required destinations, all CARGO received at its offices;

D. MIACARGO shall prepare and process all documentation necessary for the processing and delivery of CARGO received at its offices;

E. MIACARGO shall undertake all operative or administrative processes for INPOSDOM at its offices;

F. MIACARGO shall document Origin, Content and Destination ("Information") of all CARGO received at its offices, and shall have all such Information available year-round, twenty-four hours a day, seven days a week;

G. MIACARGO shall, at all times, make all Information available to INPOSDOM, as well as to direct or indirect clients of INPOSDOM;

H. MIACARGO shall guarantee the proper handling and processing of all CARGO received at its offices;

I. MIACARGO shall be the custodian for all CARGO received at its offices;

J. MIACARGO shall maintain a virtual store at its website, http://miacargodom.com/, which platform shall be made available for direct or indirect clients of INPOSDOM to make purchases and receive discounts relating to the shipment of CARGO;

K. MIACARGO shall maintain multiple service locations throughout the United States of America and the world, which service locations may be utilized by direct and indirect clients of INPOSDOM. To that end, MIACARGO shall maintain a catalog of its services, which shall be made available to direct and indirect clients of INPOSDOM; and

L. MIACARGO shall provide space at its Miami office for a representative of INPOSDOM to oversee and supervise operations relating to INPOSDOM. MIACARGO shall facilitate and address all reasonable requests made by the INPOSDOM representative intended to help him/her carry out his/her duties.

2. **INPOSDOM's Obligations**. In consideration for, and to facilitate MIACARGO's compliance with and performance of its duties under this Agreement, INPOSDOM shall perform as follows:

A. INPOSDOM shall take all steps necessary to ensure the timely, proper, and efficient payment to MIACARGO for its services, in the manner and sums set forth in Appendix A to this Agreement;

2

B. INPOSDOM shall take all steps necessary to ensure the prompt and efficient processing of CARGO through Dominican Republic customs, as well as through Dominican Republic airports and seaports;

C. INPOSDOM shall ensure that all CARGO to and from MIACARGO's offices is processed in an expedited and orderly manner;

D. INPOSDOM shall consolidate, sort through, and prepare CARGO for distribution in a manner consistent with INPOSDOM's agreements with its direct and indirect clients;

E. INPOSDOM shall ensure that all information necessary for the processing of CARGO is properly and timely gathered, stored and transmitted to MIACARGO;

F. INPOSDOM shall properly and timely gather, store and transmit to MIACARGO all proof of delivery of CARGO, utilizing the system to gather, store and transmit such information that MIACARGO shall provide;

G. INPOSDOM shall and does assume all responsibility for the execution of administrative processes and controls related to the gathering and delivering of information and CARGO to MIACARGO under the terms of this Agreement;

H. INPOSDOM shall expeditiously obtain all necessary permits or other authorizations that representatives of MIACARGO may require to execute their duties, and those of MIACARGO, under the terms of this Agreement;

I. INPOSDOM shall be responsible for establishing and maintaining all automated control and/or service systems which MIACARGO may require, as well as all marketing programs necessary to develop and retain clients; and

J. INPOSDOM shall authorize MIACARGO to place signs at IMPOSDOM's postal offices, as well as to supervise and install technology, so that MIACARGO may complete the fields of delivery of CARGO previously received by MIACARGO, giving a rank of "logistics supervisor" to MIACARGO's representatives at said post offices.

3. **Term of Agreement**. This Agreement shall commence on the effective date and shall continue for a term of ten (10) years. MIACARGO may terminate this Agreement at any time during its term, by providing six (6) months' written notice to INPOSDOM of its intent to terminate. INPOSDOM may likewise terminate this Agreement at any time during its term by doing the following: i) providing six (6) months' written notice to MIACARGO and ii) paying to MIACARGO the sum of $10,000,000.00 USD (Ten Million United States Dollars), which sum is intended to reimburse MIACARGO for expenses incurred in connection with creating and establishing the logistical system necessary to perform its duties under this Agreement.

4. **Terms of Payment**. MIACARGO shall be paid for its services under this Agreement in the manner and sums set forth in Appendix A to this Agreement.

5. **Independent Contractor**. The Parties stipulate and agree that MIACARGO is an independent contractor with respect to INPOSDOM, and neither MIACARGO, nor its employees or representatives, are employees of INPOSDOM. Nothing in this Agreement shall be construed to establish the Parties as partners, investors, agents, employees or representatives of each other for any purposes, unless otherwise specifically set forth in this Agreement.

6. **Use of Names and Logos**. The Parties may use or display their respective names and logos, as well as those of INPOSDOM's direct or indirect clients (assuming permission is obtained from such clients), in relation to the service or services that arise from this Agreement.

7. **Rates and Tariffs for This Agreement**. The Parties stipulate and agree that the rates and tariffs for this Agreement shall be derived from the Parties' operating costs, plus the profit margin that each party deems proper and acceptable. In the event that the final price or applicable rate or tariff is higher than the market average in the Dominican Republic, the Parties shall adjust and modify their rates or tariffs accordingly.

The Parties further stipulate that they shall communicate by email to discuss and establish the rates and tariffs under this Agreement. In all events, rates and tariffs applicable to this Agreement must be agreed to in writing by the Parties. All disputes between the Parties concerning rates or tariffs under this Agreement shall be mediated in Miami-Dade County, Florida before commencement of any litigation to address such disputes.

8. **Payment by INPOSDOM's Clients**. INPOSDOM's clients may use any of the following payment methods: Cash, Checks, Credit Cards or Debit Cards, depending on the nature of the required services:

    A.    Direct or indirect clients of INPOSDOM may make their payments through one of the transactional processors that MIACARGO's service platform has for such purposes; the platform also accepts debit and credit card payments;

    B.    Direct or indirect clients of INPOSDOM may pay for services by physical means at any of the offices of either INPOSDOM or MIACARGO. In cases of cash payments, the Party that collects shall be required to update the fields that confirm such payment on MIACARGO's service platform.

9. **Mutual Nondisclosure of Confidential Information**. Each Party has and may continue to have access to, confidential information and trade secrets of the other Party. Confidential information and trade secrets may be written, verbal or visual, and may include, without limitation, information relating to the business, strategy, technology, products, marketing plans, financing resources and platforms, financial condition, books and records, contacts, customer lists, manufacturing processes, methods and instructions, business plans, employees, vendors, partners and/or customers of a Party (collectively, referred to as the "Confidential Information") all of which are owned and shall continue to be owned solely by the Party. The Parties acknowledge and agree that (a) the Parties have taken measures to obtain and develop Confidential Information; (b) each Party has an interest in keeping its Confidential Information from competitors; (c) Confidential Information relates to and involves the respective businesses of each Party; (d)

4

Escaneado con CamScan

Confidential Information has value to the Parties; and (e) each Party has taken measures to maintain the secrecy of the Confidential Information.

The Parties shall, during the term of this Agreement and at all times thereafter, (i) treat all such Confidential Information as strictly confidential; (ii) not disclose any of the Confidential Information, directly or indirectly, nor use any of it in any way except in the performance of its duties hereunder; (iii) use such Confidential Information only for the purposes contemplated in this Agreement; and (iv) protect such Confidential Information, whether in storage or in use, with the same degree of care as the Party uses to protect its own proprietary information against public disclosure, but in no case with less than reasonable care. The Parties further agree to immediately inform the other Party in writing of any information it may have or know of regarding any unauthorized use or disclosure by any third party of any of the Confidential Information. Upon the termination of this Agreement, each Party shall turn over to the other Party any and all property belonging to the Party and all files, records, information, data, notebooks and similar repositories of or containing any Confidential Information, including all copies in the Parties possession or control.

10. **Mutual Indemnification.** The Parties agree to indemnify each other, and each other's directors, officers, shareholders, employees, agents, representatives, parents, affiliates, and subsidiaries, from any allegations, claims, costs, demands, losses, expenses, liabilities, damages, judgments, actions, suits, fines, penalties, or other fees that arise from a Party's sole negligence in performance of any work performed or services rendered pursuant to the Agreement. Such indemnification shall apply, without limitation, to damages caused to CARGO placed in national or international airports or seaports, with the Party responsible for the CARGO at the time the damage was incurred indemnifying the other Party, if such damage was caused by the responsible Party's negligence. After verifying the damage, the responsible party shall pay the cost of the CARGO and the shipping costs to the other Party within a period not to exceed fifteen (15) days. However, a Party shall not be liable for loss not caused by any negligence attributable to that Party, including, but not limited to, losses caused by an Act of God.

11. **Governing Law and Jurisdiction.** This Agreement shall be construed in accordance with the laws of the State of Florida, United States of America. This Agreement and any disputes arising from this Agreement, shall be subject to the exclusive jurisdiction of the Federal District Court, Southern District of Florida and, if such court does not have proper jurisdiction, the State Courts of Miami-Dade County, Florida, where venue shall exclusively vest.

12. **Waiver of Soverign Immunity.** By entering into this Agreement, INPOSDOM waives any sovereign immunity it, the Dominican Republic, or any other governmental agencies of the Dominican Republic, may otherwise have to be sued in the Courts of the United States of America or the State of Florida in connection with this Agreement. INPOSDOM explicitly acknowledges that the Parties' performance under this Agreement shall occur in the State of Florida, where MIACARGO's principal offices are situated and where it shall receive payment from INPOSDOM for services rendered hereunder. INPOSDOM stipulates and agrees that, by entering into this Agreement, it is engaging in commercial activity, as defined by the Foreign Sovereign Immunities Act, 28 U.S.C., Section 1602, *et seq.* INPOSDOM further represents that, as an institutional body of the government of the Dominican Republic (the "Sovereign"): (a) it is not separate from the

Escaneado con CamScan

Sovereign, (b) the Sovereign controls the activities of INPOSDOM, and (c) INPOSDOM can bind the Sovereign and its governmental agencies with respect to this Agreement and its terms.

13. **Consent to Electronic Service of Process**. In the event of litigation relating to or stemming from this Agreement, both Parties stipulate and agree that service by email at the email addresses set forth in paragraph 22, *infra*, shall constitute valid and enforceable service of process on both Parties. The Parties waive all other requirements relating to service of process, be it through international treaty or otherwise.

14. **Default and Opportunity to Cure; Injunctive Relief**. In the event of default by either Party to this Agreement, the other Party shall provide written notice of such default to the defaulting party, which shall have fifteen (15) days from its receipt of such notice to cure the default. Provided, however, that if INPOSDOM takes any action which prevents MIACARGO from performing under the terms of this Agreement, MIACARGO may seek immediate injunctive relief in United States courts, or other courts of competent jurisdiction, to enjoin such actions. In the event MIACARGO seeks such injunctive relief, the parties stipulate and agree that MIACARGO shall only be required to post a minimum bond.

15. **Attorneys' Fees and Costs**. In the event of litigation relating to or stemming from this Agreement, the prevailing party shell be entitled to reimbursement of all costs and expenses it incurs, including reasonable attorneys' fees, relating to or stemming from such litigation.

16. **Waivers and Amendments**. Waiver by either Party of any default hereunder by the other Party shall not be deemed a waiver of any other default. No provision of this Agreement shall be deemed waived, amended or modified by either Party, unless such waiver, amendment or modification is in writing and signed by the authorized representative of each Party.

17. **Severability**. If any provision or any part of a provision of this Agreement shall be held invalid or unenforceable, then the remaining portions of that provision and the remainder of the Agreement shall be construed as if not containing the particular invalid or unenforceable provision or portion thereof, and the rights and obligations of each Party shall be construed and enforced accordingly.

18. **Survival**. The terms, conditions and warranties contained in this Agreement that by their sense and context are intended to survive the termination or expiration of this Agreement shall so survive; including, without limitation, the confidentiality provisions contained in Section 9 and the indemnification provisions contained in Section 10.

19. **Entire Agreement; Modifications**. This Agreement constitutes the entire agreement between the Parties with respect to the subject matter hereof as of the Effective Date. All prior and contemporaneous agreements, representations, statements, negotiations, understandings and undertakings are superseded by this Agreement. This Agreement may be modified only in a written document signed by both Parties.

20. **Headings; Construction; Incorporation of Recitals**. The headings of the Sections of this Agreement are inserted for convenience only and are not intended to affect its meaning or

Escaneado con CamScan

interpretation. Throughout this Agreement, the singular shall apply to the plural and the plural to the singular, unless the context clearly indicates otherwise. The recitals set forth in the beginning of this Agreement and the applicable Exhibits attached hereto are hereby incorporated and made a material part hereof.

21. **Jointly Drafted; Counsel.** This Agreement shall be deemed to have been drafted by both Parties and, in the event of a dispute, shall not be construed against either Party. Each Party acknowledges that it has had the opportunity to consult with counsel of its own choosing prior to entering into this Agreement.

22. **Notices.** Except as otherwise provided herein, all notices or other communications to be given or that may be given by either Party to the other shall be deemed to have been duly given when made in writing and delivered in person, by e-mail, or by overnight courier delivery to:

If to INPOSDOM:

adanpeguero@inposdom.gob.do
adanpeguerord@gmail.com

If to MIACARGO:

admin@ambkshipping.com
info@mia-cargo.com

The notice addresses may be changed by written notice given by either Party to the other in accordance with this Section.

23. **Facsimile Signatures and Counterparts.** The Parties agree that this Agreement will be considered signed when the signature of a Party is delivered by facsimile transmission. Such facsimile signature shall be treated in all respects as having the same effect as an original signature. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which, taken together, shall constitute one and the same instrument.

24. **Time of the Essence.** Time is of the essence of each of its obligations under this Agreement.

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the month, date and year first above written.

By: EL INSTITUTO POSTAL
DOMINICANO (INPOSDOM)

Print Name: Adan Peguero
Print Title: Managing Director
Print Date: April 7, 2021

Firm: _____

By: EZEMARVAL LLC D/B/A
MIACARGO GROUP

Print Name: Diego Vestillero
Print Title: CEO
Print Date: April 7, 2021

Firm: _____

7

YO DR. MARCELINO DE LA CRUZ NUÑEZ, Notario Público de los del Numero del Distrito Nacional, COLEGIATURA NUMERO 3109 **CERTIFICO Y DOY FE** que las Firmas que Aparecen en este documentos de los señores ADAN PEGUERO y DIEGO VESTILLERO, cuyas generales de ley constan, quienes me han declarado bajo la Fe del Juramento que esas son las Firmas que Acostumbran a usar en Todos los Actos de sus vidas tanto Publicas y Privadas, por lo que debe dársele entera Fe y Crédito En la Ciudad de Santo Domingo Capital de la Republica Dominicana a los siete (07) días del mes abril del año dos mil veintiuno (2021 )

DR.MARCELINO DELA CRUZ NUÑEZÇ
ABOGADO NOTARIO



Escaneado con CamScan